**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BRENT KIDECKEL,

*Plaintiff*,

v.

FOREIGN NATION OF CANADA *et al.*,

*Defendants*.

Civil Action No. 1:24-cv-02907 (CJN)

# ORDER

On August 12, 2025, the Court dismissed Plaintiff Brent Kideckel's lawsuit for lack of subject-matter jurisdiction. ECF No. 145 (Aug. 2025 Order). Noting that Kideckel had been deemed a vexatious litigant in multiple states and had filed 32 motions in this action in less than a year, the Court also ordered Kideckel to show cause as to why sanctions should not be imposed under Federal Rule of Civil Procedure 11(b). *Id.* at 1. Kideckel responded with six meritless but voluminous filings asking the Court to alter its judgment and to grant leave to amend his complaint. *See* ECF No. 157 (Jan. 2026 Mem. Op.) at 1. The Court denied those requests and sanctioned Kideckel under Rule 11. *Id.*; ECF No. 158 (Jan. 2026 Order).[1]

Specifically, the Court ordered Kideckel to pay to Defendants reasonable attorneys' fees to be specified by further order. Jan. 2026 Order at 1. Three groups of Defendants have since

[1] The Court of Appeals affirmed the Court's August 2025 and January 2026 Orders. *See Kideckel v. Foreign Nation of Can.*, No. 26-7006, 2026 WL 1766008 (D.C. Cir. June 11, 2026). "[T]o the extent that" Kideckel sought "review of the portion of the [January 2026 Order] sanctioning him under Federal Rule of Civil Procedure 11," however, the Court of Appeals held that because this Court had not yet "determined the amount of attorneys' fees to be awarded," the portion of the January 2026 Order imposing sanctions was not yet appealable. *Id.* at 1.

filed statements detailing their fees: the Toronto Defendants (ECF No. 161), Defendant Aram Simovonian (ECF No. 162), and Defendants David Kideckel and Dahlia Saibil (ECF No. 163). Kideckel opposes. ECF No. 165 (Opp.). He also moves for recusal under 28 U.S.C. § 455(a), which requires disqualification where a judge's "impartiality might reasonably be questioned." *Id.* at 3–6. Finally, he requests that the Court "issue indicative rulings under [Federal Rule of Appellate Procedure] 12.1 on Plaintiff's pending threshold motions." *Id.* at 10.

Kideckel's motions for recusal and indicative rulings are denied. To start, the motions are procedurally improper, as he is "barred from making additional filings in this action or in another action against these Defendants before this Court without leave of the Court." Jan. 2026 Order at 1. And they are meritless in any event. Kideckel has failed to articulate any reason why a reasonable observer, armed with full information, would question the Court's impartiality. *See United States v. Nixon*, 267 F. Supp. 3d 140, 147–48 (D.D.C. 2017). Finally, Kideckel's request for indicative rulings on several motions that the Court purportedly "never adjudicated on the merits" fails because the Court *has* resolved all of his motions. Opp. at 7; *cf.* ECF No. 169 at 5–8 (cataloguing those rulings). Only one issue—the amount of attorneys' fees to be awarded under Rule 11—remains.

## I. Legal Standard

Rule 11 allows courts to sanction a party for advancing an argument that is frivolous or presented for an improper purpose. Fed. R. Civ. P. 11(b)(1)–(4), (c). "[S]uch sanctions may be imposed against pro se plaintiffs, [and] the district court is accorded wide discretion in determining whether sanctions are appropriate." *Gomez v. Aragon*, 705 F. Supp. 2d 21, 23 n.2 (D.D.C. 2010) (internal citations and quotation marks omitted). Monetary sanctions imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

In determining the amount of a reasonable fee award, courts apply the "lodestar" method, which requires multiplying "the number of hours reasonably expended on the litigation" by a "reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The resulting figure is presumptively reasonable. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010). The reasonable hourly rate is the prevailing market rate in the relevant community, and the relevant community is ordinarily the district in which the court sits. *See DL v. D.C.*, 924 F.3d 585, 591–92 (D.C. Cir. 2019). When the opposing party does not "rebut[] the presumption of reasonableness" established by the movants, the Court may "rel[y] solely upon [the movants'] unrebutted evidence." *Covington v. D.C.*, 57 F.3d 1101, 1111 (D.C. Cir. 1995).

In assessing the reasonableness of hours expended, the Court must exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Because Rule 11 sanctions are compensatory rather than punitive in nature, a fee award must bear a causal connection to the sanctionable conduct. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–111 (2017). As to "reasonable hourly rates," "courts in this district have overwhelmingly" consulted the "Fitzpatrick Matrix rates." *Easterling v. D.C.*, No. 1:24-cv-02973, 2026 WL 923784, at *4 (D.D.C. Apr. 6, 2026). The "Fitzpatrick Matrix" was "first generated in 2021 by the DC-USAO" and can "properly be regarded as the benchmark for hourly billing rates for complex federal litigation in this jurisdiction." *J.T. v. D.C.*, 652 F. Supp. 3d 11, 16, 16–18 (D.D.C. 2023); *see* "Attorney's Fees," U.S. Attorney's Office for the District of Columbia, available at https://www.justice.gov/usao-dc/civil-division (accessed Aug. 25, 2026).[2]

[2] Although one group of Defendants invokes the "LSI-Laffey Matrix," *see* ECF No. 163 *passim*, "the Fitzpatrick Matrix is a superior reflection of reasonable rates." *Alavi v. Bennett*, No. 15-cv-2146, 2024 WL 5056204, at *13 (D.D.C. Dec. 10, 2024). In any event, the rates charged by all of the attorneys in this case do not exceed the rates of either matrix.

Generally, calculating sanctions involves a "grind of segregating individual expense items (a deposition here, a motion there)." *Goodyear*, 581 U.S. at 111. But where "a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may . . . make a blanket award." *Id.* at 110. "[T]he determination of fees 'should not result in a second major litigation,'" and "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437). The "essential goal . . . is to do rough justice, not to achieve auditing perfection." *Id.*

## II. Application

The Court has already determined that "Rule 11 sanctions are appropriate" because Kideckel "has presented cartoonishly frivolous claims that have mired Defendants in pointless motions practice for nearly a year." Jan. 2026 Mem. Op. at 4; Aug. 2025 Order at 7. Specifically, the Court found that Kideckel failed to meet the standards required by Rule 11(b) because his countless motions and other filings have done little more than "harass, cause unnecessary delay, [and] needlessly increase the cost of litigation," and his legal contentions are seldom "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Id.* at 7; Fed. R. Civ. P. 11(b)(1), (2). The Court further determined that the "appropriate sanction" for Kideckel's violation was to pay Defendants' reasonable attorneys' fees. *Id.* at 8; Fed. R. Civ. P. 11(c)(1). The only remaining question is whether the fees requested by Defendants are reasonable. Because Kideckel does not object to the reasonableness of the fees and hours submitted by Defendants, *see* Opp. at 1–3, the Court accords their submissions substantial weight, *see Covington*, 57 F.3d at 1111.

The relevant questions are, first, whether Defendants' attorneys' rates were reasonable, and second, whether the hours expended on the litigation were reasonable. *Hensley*, 461 U.S. at 433.

Finally, the Court "must determine whether the fees requested would not have accrued but for" the sanctionable conduct. *Fox*, 563 U.S. at 839.

### A. Toronto Defendants

The Toronto Defendants request $37,972.50. ECF No. 161. The hours worked and rates charged are reflected in the following table, *see* ECF No. 161-3 at 24:

| Name | Role (Years of Exp.) | Hours | Rate | Total Bill |
|---|---|---|---|---|
| Natalia Marte | Associate (5) | 71.00 | $450.00 | $31,950.00 |
| Christopher Barraza | Partner (n/a) | 0.80 | $695.00 | $556.00 |
| Karen Kawczynski | Admin | 3.60 | $255.00 | $918.00 |
| Sharon Matheny | Paralegal | 9.40 | $280.00 | $2,632.00 |
| Elizabeth Lederer | Librarian | 3.70 | $245.00 | $906.50 |
| Laura Bennett Weber | Paralegal | 1.50 | $265.00 | $397.50 |
| Amanda Steinbacher | Librarian | 2.50 | $245.00 | $612.50 |
| | | **92.5** | | **$37,972.50** |

The rates charged by the Toronto Defendants' lawyers all comply with the 2026 Fitzpatrick Matrix, so the Court accepts that those rates are reasonable. As to the total of 92.5 hours put into this case, given the sheer number of filings Kideckel lodged on the docket, if anything the Court is impressed with counsel's restraint—the longest single time entry is only 5.90 hours, reflecting that the associate "[r]eviewed and analyzed cases concerning the standard to strike pleadings, disqualify counsel for dual representation in conjunction with D.C. Rule of Professional Conduct, and standards regarding imposing sanctions; [d]rafted opposition to Plaintiff's motion for sanctions and to disqualify counsel and supplemental brief in further support of same." ECF No.

161-3 at 17. Nothing in that entry, or any other, strikes the Court as "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

The closer question is whether all those hours can be said to have stemmed from Kideckel's sanctionable conduct. Answering that question requires the Court to decide when Kideckel's conduct became sanctionable. Upon consideration of the entire record, the Court concludes that Kideckel's conduct was sanctionable from the beginning. The Court's previous Orders make this clear. In its Order dismissing the action, the Court described it as a "frivolous suit" in which Kideckel had "filed 32 motions in less than a year," all of which were "patently meritless." Aug. 2025 Order at 1. Kideckel, the Court added, had "presented cartoonishly frivolous claims that have mired Defendants in pointless motions practice for nearly a year," all of which "present[ed] exactly the kinds of 'baseless filings . . . not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings' that Rule 11 is designed to neutralize." *Id.* at 7 (quoting *Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002)).

Not deterred by the closure of his case and the order to show cause as to why he should not be sanctioned, Kideckel followed up with still more frivolous filings, many containing artificial intelligence "hallucinations" and bearing other hallmarks of generative A.I. misuse. *See* Jan. 2026 Mem. Op. at 5. The Court thus found that, "[e]ven setting his likely A.I. misuse aside, Kideckel's response to the Court's show-cause order [wa]s inadequate." *Id.* at 6. Worse, his "stated intention to revive his claims if the Court [did] not grant his motions by launching a new action against Defendants and other parties, based solely on their involvement in defending their clients in this litigation, further evince[d] Kideckel's bad faith." *Id.* at 7. In short, throughout the duration of this lawsuit, Kideckel has violated Rule 11 through "countless motions and other filings [that] have

done little more than 'harass, cause unnecessary delay, [and] needlessly increase the cost of litigation.'" *Id.* (quoting Fed. R. Civ. P. 11(b)(1)).

Although a Court awarding attorneys' fees must generally separate the costs generated by sanctionable conduct from the costs incurred in the normal course of litigation, where "a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior," the court may make "a blanket award . . . because all fees in the litigation . . . would not have been incurred except for the misconduct." *Goodyear*, 581 U.S. at 110–11. For the reasons explained above and in the Court's previous Orders, that is the case here. This case has been "cartoonishly frivolous" from the beginning and seems to have been initiated and prosecuted with the primary intent of harassing the defendants. *See* Aug. 2025 Order at 7; Jan. 2026 Mem. Op. at 4–7. Given the reasonable rates charged and hours expended by the Toronto Defendants' counsel, the Court will order Kideckel to pay their entire requested amount of $37,972.50.

**B. Defendant Aram Simovonian (ECF No. 162)**

Defendant Simovonian requests $89,915.00. ECF No. 162. The hours worked and rates charged are reflected in the following table, *see* ECF No. 162-1 at 1–13.

| **Name** | **Role (Years of Exp.)** | **Hours** | **Rate** | **Total** |
|---|---|---|---|---|
| George B. Breen | Partner (36) | 9.50 | $950.00 | $9,025.00 |
| Elizabeth A. Harris | Partner (14) | 105.70 | $625.00 | $66,062.50 |
| Jean-Claude Velasquez | Associate (3) | 43.6 | $365.00 | $15,914.00 |
| Erica Sibley Bahnsen | Partner (14) | 10.5 | $685.00 | $7,192.50 |
| | | **169.3** | **Total:** | **$98,194.00** |
| | | | **Requested:** | **$89,915.00** |

As with counsel for the Toronto Defendants, the rates charged by Simovonian's lawyers are below those provided by the Fitzpatrick Matrix and strike the Court as reasonable. And, as explained above, given the bad-faith nature of this entire action, Simovonian may request compensation for all his fees from the start of the litigation. But Simovonian's counsel expended far more hours on this suit than did the Toronto Defendants (169.3 hours compared to 92.5). Kideckel does not challenge Simovonian's bill of costs, but the Court has an independent obligation to ensure that the hours set forth in the invoice are justifiable. *See McNeil v. D.C.*, 233 F. Supp. 3d 150, 160 (D.D.C. 2017).

After careful review of Simovonian's billing records, the Court does not find any reason to question the reasonableness of the hours expended. The docket in this action is voluminous, and despite how frivolous Kideckel's filings were, defense counsel was obliged to review those and respond. That would understandably take a considerable amount of time. Over the course of a single week in July last year, for example, Kideckel filed eight notices and motions totaling over 84 pages. *See* ECF Nos. 130–37. The time Simovonian's attorneys expended reviewing and responding to those filings, as well as the litany of others, does not strike the Court as "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The Court will therefore order Kideckel to pay the entire requested bill of $89,915.00.

### C. Defendants David Kideckel and Dahlia Saibil (ECF No. 163)

Finally, Defendants David Kideckel and Dahlia Saibil ("the Saibil Defendants") request $138,530.00. ECF No. 163. The hours worked and rates charged are reflected in the following table, *see* ECF No. 163-1 at 1–4.

| Name | Role (Years of Exp.) | Hours | Rate | Total |
|---|---|---|---|---|
| Annika Conrad | Associate (3) | 85.90 | $500.00 | $42,950.00 |
| Elizabeth Velez | Partner (15) | 89.60 | $675.00 | $60,480.00 |
| Jeffrey Robinson | Senior Counsel (43) | 31.50 | $850.00 | $26,775.00 |
| Anthony Munroe | Paralegal | 32.40 | $225.00 | $7,290.00 |
| Lauren Skala | Paralegal | 4.60 | $225.00 | $1,035.50 |
| | | **244.0** | | **$138,530.00** |

As with the other counsel in this case, the rates charged by the Saibil Defendants' lawyers are below those provided by the Fitzpatrick Matrix and strike the Court as reasonable. And, as with the other defendants, given the bad-faith nature of this entire action, the Saibil Defendants may request compensation for all their fees. But the Saibil Defendants' counsel expended over twice as many hours on this matter as the Toronto Defendants, and over 70 more hours than Simovonian's counsel. At first blush, that number appears high. But as noted above, this action involved a litany of filings, and the Saibil Defendants' counsel aver that their hours worked "reflect a conscious effort not to respond to every one of Plaintiff's 'notices' so as to not needlessly expend additional time and resources." ECF No. 163 at 3. Further, none of the individual billing statements strikes the Court as unreasonable. No lawyer ever spent more than a few hours on any given task, and the longer entries (the longest is 8.1 hours, *see* ECF No. 163-2 at 8) generally involved drafting and revising responses to Kideckel's numerous motions. Despite the low quality of those motions, the Court appreciates that drafting responses can take time. "In very few words,"—through, for instance, a single A.I. prompt—a litigant "can announce a half-truth[,] and in order to demonstrate that it is incomplete,"—or flat wrong—defense counsel "are obliged to have recourse to long and dry dissertations." FRÉDÉRIC BASTIAT, ECONOMIC SOPHISMS (Patrick

James Stirling trans., 5th ed. 1873), https://www.gutenberg.org/files/44145/44145-h/44145-h.htm (last visited Aug. 25, 2026). In other words, the hours expended by the Saibil Defendants' attorneys were not unreasonable.

## III. Conclusion

Plaintiff Kideckel has harassed Defendants in this case with over 100 meritless and vexatious filings since this action began. The Court determined previously that an order requiring Kideckel to pay Defendants' reasonable attorneys' fees would be an appropriate sanction for his wanton violations of Rule 11 and today determines that the fees requested by Defendants are reasonable. Accordingly, it is

**ORDERED** that Kideckel's Cross Motion for Recusal, ECF No. 166, is **DENIED**; it is further

**ORDERED** that the Motions for Attorneys' Fees, ECF Nos. 161 and 163, are **GRANTED**; and it is further

**ORDERED** that Kideckel shall pay the Toronto Defendants $37,972.50, Defendant Simovonian $89,915.00, and Defendants David Kideckel and Dahlia Saibil $138,530.00.

**SO ORDERED**.

DATE: August 25, 2026

CARL J. NICHOLS
United States District Judge